**WESTERN ELECTRIC COMPANY, INC., Appellant,**

v.

**COMMUNICATION EQUIPMENT WORKERS, INC., INDEPEN-DENT, Appellee.**

**WESTERN ELECTRIC COMPANY, INC., Appellee,**

v.

**COMMUNICATION EQUIPMENT WORKERS, INC., INDEPEN-DENT, Appellant.**

Nos. 76–1528, 76–1529.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1976.

Decided April 26, 1977.

**136**

Leonard E. Cohen, Baltimore, Md. (Monte Fried, Baltimore, Md., Michael Hertzberg, New York City, on brief), for Western Elec.

Paul M. Levinson, New York City (Henry Mayer, Mayer, Weiner & Levinson, New York City, Harry Goldman, Jr., Baltimore, Md., on brief), for Communication Equipment Workers, Inc.

Before CRAVEN, WIDENER and HALL, Circuit Judges.

PER CURIAM:

In this labor case brought under § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, Western Electric Company asks us to set aside the award of an arbitration panel in favor of the Communication Equipment Workers (the Union). The dispute arose out of the Company's grading of the job of Twisting Machine Operator pursuant to its Job Evaluation Plan, which was adopted by reference into the collective bargaining agreement in force at the time.[1] Under the Job Evaluation Plan, non-supervisory, hourly-rated jobs are assigned a grade based upon eleven attributes, including required education and experience, working conditions, responsibility for the work of others, and unavoidable hazards. The extent to which each of these attributes is present in a given job is indicated by a degree rating of from 1st to 5th. Each of the eleven attributes with its degree is assigned a point value, the points are added up to obtain a total job score, and based upon that score the job is graded on a scale of 32–41. The higher the grade, the higher the rate of pay.

In May 1971, Western Electric evaluated the job of Twisting Machine Operator, scored it at 189 points, and assigned it to grade 34 (183–209 points). A few months later, in January 1972, the Union filed a grievance, contending that the job rating should be increased to grade 35 (210–236 points). Specifically, the Union alleged that Twisting Machine Operator was underrated with respect to the attributes physical demand, responsibility for the work of others, working conditions, and unavoidable hazards. The grievance proceeded to arbitration, and a majority of the three-member panel agreed that the disputed job should be upgraded to grade 35. At the same time, it awarded one year's back pay to incumbent twisting machine operators, as authorized by the collective bargaining agreement. Points were increased by the panel for the attributes responsibility for the work of others, unavoidable hazards, and working conditions. This appeal from the district court's affirmance of the arbi-

1. The collective bargaining agreement applicable to this case was effective from August 28, 1971 to August 27, 1974.

tration award concerns the latter two attributes only, the point increases for both of which are essential to achieve the necessary total score to upgrade the job. We affirm.

▇▇▇ Mindful of the limited reviewing role permitted us by the Supreme Court's familiar *Steelworkers Trilogy*,[2] Western Electric first argues that, in its treatment of the attribute unavoidable hazards, the arbitration panel acted contrary to the express terms of the collective bargaining agreement by disregarding a published "Interpretation" of the Job Evaluation Plan that was made binding by the contract. One of the bases upon which the arbitration panel increased the degree rating of unavoidable hazards was employees' exposure to risk of hearing impairment. However, a "Code of Interpretations" of the Job Evaluation Plan, published by the Company in 1967 and based on long-standing practices prior to that time, stated that "no evaluation consideration will be given for exposure to hearing impairment"[3] because of the availability of protective devices. Because the applicable collective bargaining agreement, negotiated in 1972, required the Company to "continue as heretofore its administration of the job evaluation plan currently in effect," Western Electric contends that the arbitrators were not free to disregard the above Interpretation. The principle of administrative *res judicata* is also invoked by Western Electric. It takes the position that a 1970 decision of Chief Judge Northrop involving these parties and construing the same contractual language at issue here required reliance on the Code of Interpretations in administering the evaluation plan. *Communications Equipment Workers, Inc., v. Western Electric Company*, 320 F.Supp. 1277 (D.Md.1970),

aff'd. per curiam, 65 L.C. ¶ 11,771 (4th Cir. 1971).

▇▇▇ The difficulty with Western Electric's position is that the risk of hearing impairment was only one of three independent grounds relied upon by the arbitrators in increasing the rating of unavoidable hazards from 2nd to 3rd degree. The Company does not dispute the arbitrators' findings of fact that flying wire and lock-nuts in the work environment pose significant dangers of harm to twisting machine operators, nor does it assert that these findings are insufficient to support the arbitrators' decision. The hazards of flying wire and lock-nuts were relied upon by the arbitration panel, and in neither instance was the panel required to refer to the Code of Interpretations. Therefore, notwithstanding the Company's expressed desire for a holding on the *res judicata* or like effect of Judge Northrop's 1970 decision, we can only say that, assuming without deciding the correctness of Western Electric's interpretation, it still cannot prevail. We note the district court specifically mentioned such alternate reasons in its opinion.

With respect to the attribute working conditions, which was upgraded from 2nd to 4th degree by the arbitration panel on the basis of excessive noise in the workplace, Western Electric's complaint focuses on the burden of proof the panel required the Company to sustain. The conclusions of the neutral chairman of the panel contain the statement, "I believe it was incumbent upon the Company to demonstrate without a shadow of a doubt that it properly rated this attribute."

▇▇▇ While there may be some question whether in the ordinary case the standard

---

**2.** *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Basically, these cases restrict the role of reviewing courts to ascertaining whether the arbitrator exceeded the scope of the parties' submission. Once this is determined, courts may not inquire further into the merits of the dispute. Of course, the arbitrator's role is one of interpretation; he may not alter the unambiguous meaning of the contract. *Textile Workers v. American Thread Co.*, 291 F.2d 894 (4th Cir. 1961).

**3.** This applies in the rating of the unavoidable hazard category, not to that of working conditions.

of proof applied by an arbitrator is properly within our reviewing role, and more especially the extent of our reviewing authority, see *General Drivers, Helpers and Truck Terminal Employees v. Sears, Roebuck & Co.*, 535 F.2d 1072 (8th Cir. 1976); *Amalgamated Meat Cutters v. Neuhoff Packers, Inc.*, 481 F.2d 817 (5th Cir. 1973), we would be remiss if we did not express our disapproval of the "shadow of a doubt" standard that was apparently applied here. The imposition of a burden that in many, if not most, cases is simply impossible to sustain by either side can hardly be said to square with a fair system of dispute resolution.

Nevertheless, assuming the error, we do not think it was fatal because the arbitrators had before them sufficient undisputed facts upon which to reach the same result under any standard of proof. Under the evaluation plan, the existence of noise is a permissible factor in upgrading the attribute of working conditions. Moreover, the Union and the Company have agreed upon an objective set of procedures to apply in evaluating shop noise which involve the use of sound meters. Without delving unduly into the intricacies of these procedures, three sets of readings were taken with respect to the twisting machines, one in February 1972, one in January 1973, and one in June 1973. The first two sets of readings supported the Company's evaluation, but in both cases the readings were incomplete, suggesting that proper procedures had not been followed, although there was testimony that all required readings had in fact been taken. The June 1973 reading, on the other hand, supported the Union's evaluation, as is not seriously disputed by the Company. The arbitrators therefore had before them uncontradicted evidence, taken from the most recent sound readings, of noise levels sufficient to support their decision. Even if the panel had believed that all three sets of readings had been conducted in accordance with proper procedures, it would still have been entitled to upgrade the degree rating in reliance on the June 1973 figures.[4] Where, as here, we have ascertained that there are some facts to support an arbitration award, *Communications Equipment Workers*, supra, 320 F.Supp. at 1280, and that the arbitrators have not exceeded the scope of the parties' submission to them, *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), our reviewing role in the context presented here is at an end.

We have examined the assignments of error pertaining to the district court's denial of attorneys' fees and interest, and find them to be without merit. See *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and Art. II, para. 10, of the collective bargaining agreement.

The judgment of the district court will accordingly be affirmed although our reasoning is somewhat different from that of the district court, see *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943).[5]

*AFFIRMED.*

---

4. We note in this connection that the back pay award authorized by Article 14 of the collective bargaining agreement reaches back only one year prior to the date of the award, which was in 1975. Therefore, Western Electric will not be liable for back pay for the period in which the sound meter readings disclosed a lesser noise problem than was found by the arbitrators to exist.

5. The opinion of the district court is reported at 409 F.Supp. 161 (D.Md.1976).