**TWIN BOOKS CORPORATION,**
Plaintiff,

v.

The **WALT DISNEY COMPANY,** Buena Vista Home Video, Inc., and Buena Vista Pictures Distribution, Inc., Defendants.

No. C 94–00923 CW.

United States District Court,
N.D. California.

Jan. 5, 1995.

Joel Linzner, Crosby Heafey Roach & May, Oakland, CA, for plaintiff.

Timothy Carr, Carr & Mussman, San Francisco, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Plaintiff, a former non-exclusive licensee of Disney products, brings this suit for infringement of derivative copyrights in the book *Bambi*. Plaintiff alleges that last year it acquired certain rights in *Bambi*, and now seeks profits from the *Bambi* motion picture and an injunction prohibiting further exhibitions of the film.

The parties' cross motions for summary judgment came on regularly for hearing before the Court on September 9, 1994. The Court thereafter directed the parties to submit supplemental briefing. Having considered oral argument of counsel and all the papers submitted, the Court hereby GRANTS Defendants' motion and DENIES Plaintiff's motion, as follows.

### STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment is properly granted when no genuine and disputed issues of material fact remain or when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## FACTUAL BACKGROUND

*Bambi* was written by Felix Salten, an Austrian citizen. The book was first published in the German language in Berlin, Germany in 1923, without a copyright notice. A second German language edition was published in Germany in 1926, with a copyright notice.

At the time of both publications, the 1909 Copyright Act governed copyright law in the United States. Under the 1909 Act, the maximum 56 year term of copyright was divided into periods: the initial period of 28 years, and a second 28 year period upon renewal in the 28th year. A claim to copyright the 1926 edition of *Bambi* was registered in the United States Copyright Office in 1927.

On December 3, 1936, Salten and his publisher assigned rights in the *Bambi* book to Sidney Franklin ("the Salten assignment"). On April 6, 1937, Franklin assigned all his rights under the Salten assignment to Walt Disney Productions ("the Franklin assignment"). Defendant The Walt Disney Company is the successor in interest to Walt Disney Productions. Both of these assign-

ments were recorded in the Copyright Office in 1939. These assignments transferred all copyrights except literary rights to publish the original *Bambi* text and translations thereof.

Disney first released the *Bambi* motion picture in 1942, under its rights from the Franklin assignment. The picture has been re-released several times, and Disney has marketed many other products based on it.

Salten died in 1945. The copyright in the *Bambi* book was renewed in 1954 by Salten's daughter, Anna Salten Wyler. The renewal certificate shows that it was for a work registered as published, and 1926 was listed as the original publication date.

In 1958, following extensive negotiations, Anna Wyler executed three agreements with Disney concerning rights to the *Bambi* book ("the Anna Wyler agreements").

Anna Wyler died in 1977, leaving her husband, Veit Wyler, as her sole heir and successor to her rights in the literary properties of Salten. In 1993, Veit Wyler and his two children assigned all their rights in the *Bambi* book to Plaintiff ("the Viet Wyler assignment").

## DISCUSSION

Defendants originally moved for summary judgment on three theories: (1) no infringement because the *Bambi* book is in the public domain; (2) no infringement because the 1958 Anna Wyler agreements granted Disney renewal copyrights in its *Bambi* motion picture throughout the second copyright term; and (3) the Viet Wyler assignment made Plaintiff a non-exclusive licensee only; thus Plaintiff does not have standing to bring this suit.

Plaintiff cross-moved for summary judgment that Disney is liable for copyright infringement, and that some of Disney's affirmative defenses fail.[1] In response to Plaintiff's papers, Defendants concede that Plaintiff has raised triable issues of fact concern-

ing the interpretation and effect of the Anna Wyler agreements. Because the meaning of the 1993 Viet Wyler assignment depends on the effect of the Anna Wyler agreements, Defendants' motion for summary judgment now rests solely on its argument that the *Bambi* book is in the public domain.

## I. Public domain

Defendants argue in the alternative that *Bambi* fell into the public domain (1) in 1923 upon publication without copyright notice, (2) in 1926 upon publication with a 1926 copyright notice, or (3) in 1951 when Anna Wyler failed timely to renew the copyright. The Court is persuaded by Defendants' third argument and thus does not rule on the first two.

Even if *Bambi* did not fall into the public domain in 1923 or 1926, it is clear that under the 1909 Act, the *Bambi* book fell into the public domain at the end of its first 28 year period unless Anna Wyler promptly renewed the copyright. 1909 Copyright Act, 17 U.S.C. § 24 (superseded 1976); 2 *Nimmer* § 9.05[B] at 9–68. It is also clear that, under the 1909 Act, the term of copyright protection commences when the work is first published, with or without a copyright notice. 17 U.S.C. §§ 24, 26 (1909 Act); *see, e.g., Basevi v. Edward O'Toole Co.*, 26 F.Supp. 41, 47 (S.D.N.Y.1939); *American Code Co. v. Bensinger*, 282 F. 829, 836 (2d Cir.1922). Relying on *Heim v. Universal Pictures Co.*, 154 F.2d 480 (2d Cir.1946), Plaintiff argues that the copyright term for *Bambi* began on the date of publication with notice in 1926. This argument is totally without merit. In *Heim*, the court held that, unlike publication in the United States without the appropriate copyright notice, publication abroad without notice of United States copyright will not necessarily preclude the owner from subsequently obtaining a valid United States copyright. *Id.* at 480. The court in *Heim* never mentioned the effect of its ruling on the term of a copyright. There is no basis for Plain-

---

1. The affirmative defenses addressed by Plaintiff's motion are that the *Bambi* book is in the public domain (2d), that Disney's actions were authorized by the copyright owner (3d), that Twin Books has no standing (4th), that Plaintiff's rights are unenforceable because the Viet Wyler assignment is void under the doctrine of champerty and maintenance (5th), and that the copyright is unenforceable because it was secured by providing inaccurate and misleading information (6th).

tiff's leap from the *Heim* ruling to the conclusion that the term of copyright protection does not start in such cases until the work is published with notice.

■ Accordingly, the *Bambi* copyright, assuming its validity, expired in 1951. Anna Wyler's failure to renew timely in 1951 resulted in *Bambi's* release into the public domain. However, in 1960 President Eisenhower issued a proclamation, as follows:

> That with respect to ... (1) works of citizens of Austria subject to renewal of copyright under the laws of the United States of America on or after March 13, 1938 and prior to July 27, 1956, there has existed during several years of the aforementioned period such disruption or suspension of facilities essential to compliance with the conditions and formalities prescribed with respect to such works by copyright laws of the United States of America as to bring such works within the terms of the [1909 Act], and that accordingly the time within which compliance with such conditions and formalities may take place is hereby extended with respect to such works for one year after the date of this proclamation.

There are no cases or other authorities interpreting or applying this proclamation. Thus, the Court must determine its applicability to the case at bar as an issue of first impression. Plaintiff argues that this proclamation operates retroactively to render Anna Wyler's 1954 renewal timely and valid. Defendants argue that the proclamation should be interpreted to allow a copyright owner whose copyright had expired to file for renewal in the one year period after the proclamation. The language of the proclamation is susceptible to either interpretation.[2]

Defendants argue that no intent for retroactive application appears on the face of the proclamation or in Section 9(b). Section 9(b) provides that no liability shall attach for lawful uses of copyrights prior to the effect of a proclamation. Thus, if the proclamation applied to Wyler's 1954 renewal, it would restore copyright protection for *Bambi* as of 1960, and not retroactively to 1954. However, this does not resolve the question of whether, to take advantage of the proclamation, Wyler must have filed for a renewal of copyright after the proclamation was issued in 1960.

The Court finds some guidance in an analogy to the North American Free Trade Agreement ("NAFTA"), which provides for a one year cure period for restoring copyright protection for certain motion pictures which had fallen into the public domain because of failure to comply with notice formalities. Under NAFTA, copyright owners must file a statement of intent with the Copyright Office regarding films for which they wish to restore protection. *See* NAFTA Implementation Act, Pub.L. 103–182 § 334, 17 U.S.C. § 104A (1993). It is true that Congress imposed different and more stringent requirements in NAFTA than those in Section 9(b). On the other hand, NAFTA was enacted after the passage of the Copyright Act of 1976, which relaxed the stringent formalities imposed by the 1909 Act. It follows that the 1960 proclamation, in the context of the more stringent 1909 Act, should not be construed more liberally to provide automatic retroactive validation of copyrights that would otherwise have expired. Rather, the proclamation must be interpreted to require copyright owners who had previously made a defective renewal to file a corrective renewal within a year after the proclamation.

On a policy level, this interpretation would put copyright owners who had failed to renew effectively on equal footing with those who had been unable to renew at all, and who thus had only one year after the proclamation to do so. If, on the contrary, copyright owners could take advantage of the proclamation without filing any corrective documents, the Copyright Office and the public would not know which works were still

---

2. Defendants also argue that Anna Wyler cannot take advantage of the proclamation because the language of Section 9(b) of the 1909 Act, which provided authority for the proclamation, allows extensions of time only for those who were actually rendered unable to comply with the copyright formalities. The plain language of the statute, identifying those copyright owners who "are or *may have been* temporarily unable to comply," defeats this assertion. Moreover, the record does not reflect the reason for Anna Wyler's delay in filing the renewal application; thus, the Court cannot assume she was not actually unable to file her renewal in 1951.

protected despite defective renewals, and when such copyright protection would expire.

The facts at bar illustrate the necessity of the requirement that corrective documents be filed. Wyler's 1954 renewal recited 1926 as the first date of publication. Thus, one cannot discern from the face of Wyler's 1954 renewal that it was a defective filing cured by the 1960 proclamation. Nor could one discern that the copyright would expire three years earlier than the renewal indicates.

Accordingly, the Court holds that Anna Wyler's copyright is not saved by the 1960 Presidential Proclamation because Wyler failed to file a corrective document to cure her inaccurate and late renewal within a year after the proclamation. Therefore, the copyright in *Bambi* expired, and fell into the public domain, in 1951.

## II. Licensee estoppel

■ Plaintiff raises licensee estoppel as a defense to Defendants' claim that the copyright is in the public domain, asserting that as a licensee of the copyright, Disney is estopped from challenging its validity. Once again, this is an issue of first impression. Although the Supreme Court has held that licensee estoppel is inapplicable to patent licensees, *see Lear Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), no court has decided whether copyright licensees are estopped. However, the Ninth Circuit holds that "[w]here precedent in copyright cases is lacking, it is appropriate to look for guidance to patent law, 'because of the historic kinship between patent law and copyright law.'" *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1333 (9th Cir.1984) (quoting *Sony Corp. of America v. Universal City Studios*, 464 U.S. 417, 437–40, 104 S.Ct. 774, 787, 78 L.Ed.2d 574 (1984)). *See also* 3 *Nimmer* § 10.15[B] at 10–125 ("On the basis of *Lear*, which has been applied outside the patent realm to copyright cases as well, plaintiffs may no longer argue licensee estoppel").

Plaintiff's reliance on *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir.1987), is unpersuasive. First, as Defendants note, in that case the court upheld an explicit no-contest clause in the copyright license, and limited its holding to that situation: "Our case involves a negotiated clause rather than a doctrine that in effect reads a no-contest clause into every licensing agreement." *Id.* at 1200. In the dictum cited by Plaintiff, the court opined that the economic argument made by the Supreme Court in *Lear* does not apply to copyright licensees, because the "economic power conferred is much smaller." *Id.* Plaintiff's attempt to rest on this argument, given the $490 million in "economic power" wielded by Disney by virtue of its *Bambi* license, is singularly unpersuasive.

Accordingly, the Court holds that licensee estoppel does not apply in this case.

## CONCLUSION

1. Defendants' motion for summary judgment is GRANTED on grounds that the copyright in *Bambi* expired, and *Bambi* fell into the public domain, at the latest in 1951, when Anna Wyler failed timely to renew the copyright; and that licensee estoppel does not apply to bar Defendants from raising the public domain issue as a defense.

2. Plaintiff's cross-motion for summary judgment is DENIED in its entirety as moot.

3. The Clerk shall enter judgment in favor of Defendants, and Defendants shall recover their costs from Plaintiff.

IT IS SO ORDERED.