KAMAKAZI MUSIC CORP.,
Plaintiff-Appellee,

Barry Manilow and Warner Bros.
Publications Inc., Plaintiffs,

v.

ROBBINS MUSIC CORPORATION,
Defendant-Appellant.

Vicks Lithograph, Inc., Defendant.

No. 1082, Docket 81–7922.

United States Court of Appeals,
Second Circuit.

Argued May 13, 1982.

Decided July 20, 1982.

[black redaction bar]

Robert Osterberg, New York City (Abeles, Clark & Osterberg, New York City, of counsel), for defendant-appellant.

Sandor Frankel, New York City (Bender & Frankel, New York City, of counsel), for plaintiffs and plaintiff-appellee.

Evans, Severn, Bankert & Peet, Utica, N.Y., for defendant.

Before FEINBERG, Chief Judge, and LUMBARD and NEWMAN, Circuit Judges.

LUMBARD, Circuit Judge:

Kamakazi Music sued Robbins Music, both being New York corporations, in the Southern District of New York for infringing its copyrights in the sheet music of pop star Barry Manilow.[1] Kamakazi sought a preliminary injunction, damages and attorneys fees under the Copyright Act, 17 U.S.C. §§ 502–05 (Supp. IV 1980). Robbins responded that it had licensed the copyrights from Kamakazi, that there was no federal jurisdiction as Kamakazi's suit was for breach of contract and, in the alternative, it sought arbitration as provided in the contract. Judge Sweet took jurisdiction and sent the case to arbitration. The arbitrator awarded Kamakazi an injunction, $250,000 in damages, and $50,127.72 in attorney's fees under 17 U.S.C. § 505. Judge Sweet confirmed the award. Robbins appeals, arguing again that the federal court has no jurisdiction to hear what Robbins terms a suit for breach of contract, and arguing further that the arbitrator exceeded his authority in basing his remedies on the Copyright Act. We affirm. That Robbins interposed a contract as defense does not turn Kamakazi's suit under the Copyright Act into a suit for breach of contract. As for the challenged award, the arbitrator exercised only the jurisdiction which Robbins itself pressed upon him.

The facts were found by the arbitrator. On November 15, 1976, Kamakazi licensed Robbins until December 31, 1979 to print and sell sheet music composed by Barry Manilow. Once the contract expired, Robbins would have the right to print and sell Manilow works in "mixed folios" of sheet music for one year. Robbins could also sell its inventory of Manilow works which were not in "mixed folios" for seven months (until July 31, 1980) provided Robbins told Kamakazi what its inventory was before the contract expired.

Robbins did not tell Kamakazi what its inventory of Manilow works was. Robbins nevertheless continued to sell "personality folios" after the contract expired. When Kamakazi complained, Robbins took the position that "personality folios" were included under the term "mixed folios" and therefore Robbins could sell them for one year. It is not disputed that Robbins sold many thousands of "personality folios" after the contract expired.

Kamakazi's complaint, filed on May 19, 1980, clearly stated claims under the Copyright Act. It did not mention breach of contract as a theory of liability. Kamakazi sought a preliminary injunction, damages and attorneys fees under the Copyright Act. Robbins interposed its interpretation of the contract as a defense, claimed that Kamakazi's suit was for breach of contract and contended that the district court lacked jurisdiction. Robbins sought in the alternative to compel arbitration under § 20 of the contract, which provided that "any controversy or claim arising out of, or relating to this agreement or the subject matter thereof, or the breach hereof shall be settled by arbitration" in New York City according to the rules of the American Arbitration Association. On June 5, 1980, Judge Sweet ruled that the district court had jurisdiction because Kamakazi had sued under the Copyright Act, but ordered the case to arbi-

---

1. Manilow owns all the stock of Kamakazi Music Corp. The corporation holds Manilow's copyrights.

tration pursuant to the arbitration clause. Judge Sweet denied Kamakazi's request for a preliminary injunction for fear of pre-empting the arbitration.

The arbitration began August 12, 1980, with Kamakazi's opening statement that it was suing for copyright infringement. At the hearing on September 5, the parties discussed the damages to be considered by the arbitrator, and the arbitrator summarized the colloquy as follows:

Mr. Frankel [for Kamakazi] indicated that the testimony here would probably be duplicative of the testimony to be given in the Southern District case, and that perhaps in an effort to save time, I might consider not hearing the damage issue.

Mr. Osterberg [for Robbins] raised the potential that he might argue in the Federal Court, Southern District case that the award of damages and the arbitration might limit Judge Sweet and that, therefore, he did not believe that the damage issue should be waived at this hearing.

After considering the arguments, I determined and expressed to Mr. Frankel my opinion that the arbitration between the two parties, which was referred to the American Arbitration Association pursuant to Judge Sweet's opinion, *should be a total resolution of the claims and liabilities between the parties*; that is, Kamakazi Music and Robbins Music, and that I was not prepared to exercise discretion, if I have any, to not hear the damage issue, and that I would hear testimony as to damages. (Emphasis added.)

The arbitrator made his award on liability and damages on March 6, 1981, ruling for Kamakazi on the disputed issues of fact. He found that "personality folios" were not included in the contract's provision for "mixed folios," and therefore Robbins had no right to sell "personality folios" after December 31, 1979. The arbitrator found that Robbins wilfully continued to sell "personality folios" in violation of 25 copyrights owned by Kamakazi,[2] and he awarded Kamakazi statutory damages of $10,000 per copyright infringed under 17 U.S.C. § 504(c). He also granted a permanent injunction against Robbins' publication or sale of Kamakazi copyrights. On April 7, the arbitrator made a supplemental award of $50,127.72 in attorney's fees under 17 U.S.C. § 505. On August 3, Judge Sweet confirmed the award subject to a hearing as to the validity of Kamakazi's copyrights. 522 F.Supp. 125 (S.D.N.Y.1981). He found the copyrights valid on September 15, 1981.

We agree with Judge Sweet that the district court had jurisdiction. Kamakazi's suit is, was, and always has been based on the Copyright Act. Kamakazi sued Robbins for publishing Manilow works after the contract between the two had expired. Once the contract had expired, Robbins was liable for infringement of Kamakazi's copyrights. Given the explicit language of Kamakazi's complaint, and the acts complained of, it is frivolous for Robbins to contend that its contractual defense makes Kamakazi's suit one for breach of contract.[3] The district court had jurisdiction because the claim was for copyright infringement. The claim sent to the arbitrator was for copyright infringement. The damages calculated by the arbitrator at Robbins' urging were for copyright infringement.[4]

---

2. The arbitrator ruled that Robbins had infringed 12 copyrighted songs and 13 copyrighted compilations. It is not clear whether Kamakazi owned copyrights in any compilations published by Robbins, and Robbins challenged the award on this ground when it moved to vacate the award in district court. Judge Sweet, however, ruled that the arbitrator's award was within his jurisdiction. Robbins did not challenge this ruling on appeal.

3. It is also frivolous for Robbins to claim that by agreeing to arbitrate claims under the procedures of New York law, Kamakazi thereby made an election of remedies which precluded resort to the federal courts on a copyright claim. The arbitration clause here merely chose what state's law shall govern arbitration proceedings and the construction of the contract. It in no way foreclosed Kamakazi from its remedies under the Copyright Act.

4. Robbins contends that the arbitrator awarded punitive damages, and that public policy precludes the award of such damages. The arbitrator did not, however, state that the damages

In the circumstances of this case, the arbitrator had jurisdiction to make an award under the Copyright Act. We agree with Judge Sweet that the arbitration clause was broad enough to encompass Copyright Act claims which required interpretation of the contract. Even if the arbitration clause did not encompass Kamakazi's claims, it is hornbook law that parties by their conduct may agree to send issues outside an arbitration clause to arbitration. *See Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, 274 F.2d 805, 809 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 656 (9th Cir. 1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965); *Capital City Telephone Co. v. Communication Workers of America*, 575 F.2d 655, 658 (8th Cir. 1978). Robbins forced Kamakazi to submit its claim to arbitration and urged the arbitrator to consider all of the issues between the parties. Robbins by its conduct clearly agreed to submit all claims under the Copyright Act to the arbitrator, including Kamakazi's claim—pressed from the start—for attorney's fees under 17 U.S.C. § 505.[5]

We find no merit in Robbins' other arguments on appeal. Robbins contends that "public policy" prohibits submission of copyright claims to arbitration, but it cites no case for this proposition and we can find none. Public policy does prohibit submission of some securities, patent and antitrust claims to arbitration. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 512–13, 94 S.Ct. 2449, (1974) (securities); *American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 826–27 (2d Cir. 1968) (anti-

trust); *N. V. Maatschappij Voor Industriele Warden v. A. O. Smith Corp.*, 532 F.2d 874, 876 (2d Cir. 1976) (per curiam) (patent). The only "public interest" in a copyright claim concerns the monopoly inherent in a valid copyright. The validity of the copyrights here, and therefore the existence of the monopoly, was not determined by the arbitrator, but by the district court. Consequently, we see no public policy against arbitration of this claim for the infringement of a valid copyright.

Robbins challenges the arbitrator's award of attorney's fees on the ground that New York law, which controlled the arbitration procedure, prohibits the award of such fees unless the contract so provides. N.Y.C.P.L.R. 7513. Robbins misconstrues the the import of that statute, which provides in pertinent part:

> Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees together with other expenses, *not including attorney's fees*, incurred in the conduct of the arbitration, shall be paid as provided in the award. (Emphasis added.)

The statute does not bar the award of attorney's fees; it merely does not grant authority to do so. In this case, the arbitrator drew upon an independent source of authority—the Copyright Act, 17 U.S.C. § 505—to award attorney's fees. The federal statute grants authority to award attorney's fees; the failure of New York law to grant such authority is irrelevant. *Cf. Morris v. Government Employees Insurance Co.*, 81 A.D.2d 880, 439 N.Y.S.2d 163 (2d Dep't 1981) (C.P.L.R. 7513 is not inconsistent with Insurance Law § 675 which allows recovery of attorney's fees.)[6]

---

awarded were punitive. Judge Sweet ruled that the arbitrator could use statutory damages under the Copyright Act as a reasonable measure of damages. We agree.

5. Robbins cites various statements by the arbitrator in an attempt to show that the arbitration was supposed to be limited to contract claims and contract damages. A fair reading of these statements in the context of the arbitration record shows that the arbitrator did not consider himself so limited.

6. Our research has discovered no case construing N.Y.C.P.L.R. 7513 with respect to a federal statute's authorization of attorney's fees. Robbins' appeal on this point therefore presented a new question of law which cannot be characterized as frivolous. For this reason, we deny Kamakazi's request for the award of attorney's fees on appeal.

We have considered Robbins' other arguments and find them without merit, largely for reasons enunciated in Judge Sweet's opinion of August 3, 1981.

Affirmed.