**Stan MALINOWSKI, Plaintiff,**

v.

**PLAYBOY ENTERPRISES, INC., a foreign corporation, Defendant.**

No. 87 C 204.

United States District Court, N.D. Illinois.

Feb. 6, 1989.

William T. McGrath, Robert F. Ward of Chadwell & Kayser, Ltd., Chicago, Ill., for plaintiff.

Burton Joseph, Carol Johnson, Daniel L. Dreiser, Edward S. Lichtenstein of Barsy, Joseph & Lichtenstein, Chicago, Ill. (Kenneth P. Norwick of Norwick & Schad, New York City, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

A professional free-lance photographer, Stan Malinowski ("Malinowski"), has brought this action against Playboy Enterprises, Inc. ("Playboy") claiming copyright infringement and *quantum meruit*. The suit involves two sets of photographs taken by Malinowski at Playboy's request, some of which were published by Playboy in its magazine. Defendant has counterclaimed seeking declaratory judgment that it is the owner of the copyrights to the photographs in question and seeking to enjoin plaintiff from publishing or otherwise exploiting any of them. The parties have filed cross-motions for summary judgment.

## FACTS

Piecing together the facts that appear to be uncontested the following unfolds: Malinowski is a professional fashion and beauty photographer with an office in Chicago, has thirty years of experience, and is well-known in the fashion and beauty photography world. Playboy is a corporation that has its principal place of business in Chicago. Playboy is the publisher of Playboy magazine, a monthly magazine that regularly includes within its pages photographs taken for it by professional photographers. During its almost thirty-five years of existence Playboy has regularly hired free-lance photographers to take photographs.

### A. Carrie Leigh Photographs

In the summer of 1985 Hugh Hefner, the Editor and Publisher of Playboy magazine, decided that the magazine would publish a feature containing photographs of Carrie Leigh ("Leigh"), who was his then live-in girlfriend and the "first lady of the Playboy mansion." Marilyn Grabowski ("Grabowski"), Playboy's West Coast Photo Editor, was responsible for conceiving and producing this feature. During that same summer Grabowski called Malinowski and asked him if he would be available to take photographs of Leigh. Malinowski was selected primarily because he had done previous similar work for Playboy and he was known to be a reliable professional photographer.

Malinowski agreed to accept the assignment. The parties therefore entered into an oral agreement whereby Malinowski agreed to photograph Leigh and in return Playboy agreed to pay him for his services and expenses, including a page rate if the photographs were published in the magazine. The oral agreement was silent as to ownership of the copyright. There was some evidence submitted that in the past Playboy routinely issued assignment sheets, i.e., a document setting forth the terms and conditions of the oral agreement to take photographs, which included a statement that Playboy was to own the copyrights to the photographs. In the case of the Leigh photographs, through an oversight, no assignment sheet was sent by Playboy to Malinowski.[1]

Photographs of Leigh were taken at Playboy's studio in Los Angeles in August and September of 1985. On or about October 23, 1985 Malinowski sent an invoice in the amount of $13,598.55 to Playboy covering the Leigh photography.

On January 28, 1986 Playboy issued a check in the full amount of Malinowski's invoice in payment for the Leigh photography.

Playboy's accounting department stamped a legend on the back of the check stating:

"ANY ALTERATION OF THIS LEGEND–AGREEMENT VOIDS THIS CHECK. CONTAINS THE ENTIRE UNDERSTANDING OF THE PARTIES AND CANNOT BE CHANGED EXCEPT BY WRITING SIGNED BY BOTH PARTIES. BY ENDORSEMENT, PAYEE: acknowledges payment in full for the services rendered on a work made for hire basis in connection with the work named on the face of this check, it confirms ownership by Playboy Enterprises, Inc. of all rights, title and interest, including all rights of copyright, in and to the work."

Malinowski through a white-out process deleted the stamped legend and added the following counter-legend to the check:

"All photos: copyright Stan Malinowski 1986."

Malinowski then negotiated the check by depositing it in his bank. However on or about March 5, 1986 Playboy advised Malinowski that it was reclaiming the money because of Malinowski's assertion of copyright ownership in the photographs. Playboy subsequently obtained the return of the proceeds from Malinowski's account on the grounds that Malinowski had altered Playboy's legend. Playboy never made

---

1. Prior to 1985 the photographer was not expected to sign the assignment sheet. Starting in 1985 Playboy requested that the photographer sign and return one copy of the assignment sheet.

any other payment to Malinowski for the Leigh photographs.

On April 3, 1986 and April 24, 1986 Malinowski wrote to Playboy asserting his copyright ownership in the photographs and advised Playboy not to make unauthorized use of the photographs. Playboy subsequently published two of Malinowski's Leigh photographs in the July 1986 issue of Playboy magazine. The final prepublication date after which changes could not feasibly be made to the contents of the July issue was March 24, 1986. On May 2, 1986 Malinowski sent to the United States Copyright office an application for a copyright registration for four of the photographs of Leigh, none of which was among those that were published by Playboy.

### B. Swim Wear Photographs

In January 1986 Playboy decided to run a fashion pictorial featuring swim wear in its June 1986 issue. James Larson ("Larson"), Associate Photo Editor for Playboy magazine, was responsible for the photographs for this issue. He and other Playboy personnel decided that the photos for the June 1986 issue should be shot in Jamaica by a free-lance photographer. Subsequently Malinowski was asked to and did accept the assignment. In return Playboy agreed to pay Malinowski for his services in taking the photographs and for his expenses incurred. After the agreement was reached Larson sent to Malinowski's studio an assignment sheet dated January 28, 1986 which set forth and highlighted terms of Playboy's acquisition of all rights to the photographs and that the photographs would be understood to be works made for hire. The assignment sheet required Malinowski to sign a copy and return the signed copy to Playboy. Malinowski denies receiving the assignment sheet prior to completing the assignment. When he did receive the assignment sheet he crossed out every line on it, signed it, and returned it to Playboy. Playboy subsequently refused to pay Malinowski's invoice for the swim wear assignment.[2]

On May 7, 1986 Malinowski registered in his own name and claimed copyright ownership of the photographs taken for the swim wear issue. On May 23, 1986 Playboy registered with the United States Copyright office its copyright in the June 1986 issue of Playboy magazine.

Malinowski's Statement of Material Facts includes the following:

\* \* \* \* \* \* /

14. Grabowski contacted Malinowski and asked him if he would be interested in doing the assignment. He agreed to do the assignment.

15. Playboy agreed to pay Malinowski for his professional services and expenses and agreed to pay a "pay rate" if the photographs were published in the magazine.

16. At no time did Grabowski or Playboy discuss copyright ownership of the Leigh photographs with Malinowski.

\* \* \* \* \* \*

33. Larson contacted Malinowski and asked him if he would be interested in doing the [swim wear] assignment. Malinowski agreed to do the assignment.

34. Playboy agreed to pay Malinowski for his professional services and expenses and agreed to pay a "pay rate" if the photographs were published in the magazine.

\* \* \* \* \* \*

37. At no time either before or after the shoot did Larson or Playboy discuss copyright ownership of the swim wear photographs.

Malinowski testified as follows at his deposition concerning his agreement with Playboy regarding the Leigh photographs:

Q. Let me call your attention to the reference to breach of contract [in Malinowski's letter to Playboy dated April 24, 1986, Exhibit 5 to Playboy's Statement]. What was your contract with Playboy?

A. I photographed Carrie Leigh and Playboy was going to publish and pay me for the use of the photos.

---

2. This invoice was for the sum of $7467.00.

**614**

Q. Along the same lines that they were free to publish any other work that you did for them?

A. Along the lines, yes. Along those lines.

Q. So that was the contract?

A. There was no written contract as such.

Q. No, but that was your understanding?

A. Yes.

Q. And you claim in this letter that the legend [on Playboy's check in payment for the Leigh photographs] breaches that contract?

A. It breaches the understanding.

Q. Fine. It breaches the understanding. And why is that?

A. Well, because I did not agree to relinquish copyright to Playboy and in the legend I believe there is a reference made to Playboy's owning the copyright.

Q. So that the dispute with Playboy has to do with the rights you did or did not grant to Playboy; is that right?

A. It has to do with ownership of the copyright.

Q. You take one position and Playboy takes another position?

A. That is correct.

Q. But the one thing there is no doubt about is that you understood that they were going to publish the photos?

A. No, I would believe they normally would publish the photos, but that did not always happen as a matter of course.

Q. But you testified a few minutes ago that you expected and hoped that they would?

A. Yes.

Malinowski dep., pp. 513–15.

Specifically, with respect to both sets of photographs, Malinowski testified as follows:

Q. It was your understanding?

A. Yes.

Q. That they were free to make whatever use they wanted but that you would get paid?

A. Yes.

Q. And that would be true of the swim wear shoot?

A. Correct.

Q. And the Carrie Leigh shoot?

A. Correct.

Q. An when you deliver[ed] the film to Playboy on the swim wear shoot and the Carrie Leigh shoot you understood that they were going to use it in a magazine?

A. Yes.

Q. And expected and hoped they would?

A. Yes. They even specified the issues.

Malinowski dep., p. 499.

### Plaintiff's Contentions

It is plaintiff's theory that as the creator of the photographs he was the owner of the copyrights to them and plaintiff's use constituted an infringement. In anticipation of defendant's claim he also argues that the photographs are not "work made for hire" under the copyright law because plaintiff was not an "employee" of defendant under the terms of the law nor did defendant comply with the statutory requirements for work specially ordered on commission.

Plaintiff's main contention in Counts I and II of his complaint is that he was the owner of the copyright to both sets of photographs and as owner Playboy's use of them violated the copyright law and entitled him to actual and statutory damages for the infringement and an accounting of all gains derived by their use.[3]

### Defendant's Contention

Defendant responds arguing that plaintiff's claims do not "arise out of the copyright law," so that this court does not have jurisdiction of these proceedings, or in the alternative the photos constituted "work made for hire" for Playboy.

---

3. In Counts III and IV plaintiff seeks damages under *quantum meruit* for the reasonable value of his services in taking the photographs.

## DISCUSSION

Section 201(a) of the 1976 Copyright Act ("Copyright Act"), 17 U.S.C. § 201(a), provides:

"Copyright is a work protected under the title vests initially in the author or authors of the work."

The person who creates the work is the author. For photographs the photographer is the creator of the work. *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57–61, 4 S.Ct. 279, 280–282, 28 L.Ed. 349 (1884).

However there is a statutory exception to this general rule for work made for hire under which the employer or the one commissioning the work is the owner. 17 U.S.C. § 201(b). If the work is prepared by an employee within the scope of his employment, then it is "made for hire"; if the work is specially ordered or commissioned for use as a contribution to a collector's work and if the parties expressly agree in a written instrument signed by them, it is also considered "made for hire."

The parties have argued in their briefs extensively over the ownership of the copyrights to the two sets of photographs. However defendant has raised the issue of jurisdiction of this court to decide the case so we initially turn to this question for it may be dispositive of this suit.

Plaintiff claims 28 U.S.C. § 1338(a) as the basis for jurisdiction in this case. Under Section 1338(a) district courts have jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trademarks without regard to amount in controversy or citizenship of the parties. Wright, Miller & Cooper, *Fed. Practices & Procedures*, § 3582, p. 299.

Plaintiff argues that whether an action arises under federal copyright law is determined by the "well pleaded complaint" rule, i.e., plaintiff's statement of his own claim. However this applies only with regard to a Rule 10(b)(1) motion. *Vestron, Inc. v. HBO, Inc.*, 839 F.2d 1380, 6 U.S. P.Q2d 1016, 1017 (9th Cir.1987). Plaintiff's complaint clearly alleges a violation of his copyright and claims relief, *inter alia*, under the Copyright Act. Consequently,

were this a Rule 10(b)(1) motion plaintiff would prevail on the jurisdictional argument.

However this case is before the court on summary judgment so we must look beyond the pleadings to see if this case really does arise out of the copyright law or whether the complaint might just be an example of "creative labeling." *Royal v. Leading Edge Prdts., Inc.*, 833 F.2d 1, 5 (1st Cir.1987). It is clear from plaintiff's own sworn testimony that he authorized defendant to publish the photographs to which he claims the copyright. He admits and defendant agrees that in neither situation was ownership of the copyright ever discussed. He expected and hoped defendant would publish his photographs. Certainly he expected to be paid. Defendant offered to pay on a restricted basis (that plaintiff must acknowledge defendant's ownership of the copyright.) This may well be a violation of the contract between the parties. However the case law that has developed since adoption of the Copyright Act very specifically states that non-payment of royalties do not constitute claims arising out of the Copyright Act. *Stepdesign, Inc. v. Research Media, Inc.*, 442 F.Supp. 32, 22 (S.D.N.Y.1977); *Wolfe v. United Artists Corp.*, 583 F.Supp. 52, 56 (E.D.Pa.1983); 3 *Nimmer on Contracts*, § 12.01[A], 12–4 (1988).

Although plaintiff alleges a violation of the copyright law in his complaint, he has proved in his motion for summary judgment a contract claim only. In his statement of uncontested facts he alleges, without disagreement by defendant, that the ownership of the copyrights was not even discussed at the time of his oral agreement to take pictures for a monetary consideration. He simply proved that he was not paid. The fact that plaintiff and defendant dispute ownership to the copyright is not relevant to the claim of plaintiff. A plaintiff may not invoke original federal jurisdiction by anticipating a defense raising a federal question. Wright, Miller & Cooper, *Fed. Practices & Procedures*, § 3566 (1988); *Effects Assocs., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir.1987). He was promised money for taking photographs and he did not get it.

This view is reinforced by a reading of plaintiff's opening brief on his motion for summary judgment on his complaint. Virtually the entire brief with references to Counts I and II is spent creating and demolishing a strawman, i.e., the expected defense that the photographs were in fact "work made for hire."

Cases relied on by plaintiff involve situations where there is actual infringement alleged, such as *Topolos v. Caldewey*, 698 F.2d 991 (9th Cir.1983) and *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228 (2nd Cir.1982); or where the plaintiff's principal claim was ownership of a copyright, e.g., *Goodman v. Lee*, 815 F.2d 1030 (5th Cir.1987).

On the other hand courts have not been reluctant to dismiss for jurisdictional reasons cases masquerading as copyright infringements that are actually collection cases, e.g., *Royal v. Leading Edge Prdts., Inc.*, 833 F.2d 1 (1st Cir.1987). As stated by that court:

"In order to gain access to a federal forum, a litigant must allege particulars which raise some substantial federal issue. This meagre helping of facts served up by this plaintiff do not meet the standards for such a bill of fare. Though 'that which we call a rose by any other name would smell as sweet,' W. Shakespeare, *Romeo and Juliet* (1595), we must parse causes of action as they are, not as the pleader might fondly wish they were. 'The jurisdiction of the federal district courts cannot be manipulated by the simple expedient of creative labelling.' [citation omitted] Accordingly, we decline appellant's invitation to dance at a masquerade ball. We will not assume jurisdiction over what is essentially a garden-variety contract dispute, notwthstanding [sic] [plaintiff's] heroic efforts to costume it in the guise of a copyright action."

833 F.2d at 5.

## CONCLUSION

Since this is a collection case in which ownership of the copyright is essentially

irrelevant, the court has no jurisdiction to hear Counts I and II.[4]

Since Counts III and IV are pendent claims, the court also lacks jurisdiction to hear those counts.

Accordingly, the motion of defendant to dismiss is granted and the motion of plaintiff is denied. Counts I, II, III and IV of plaintiff's complaint are dismissed as well as Counts IV and V of the counterclaim of defendant.

IT IS SO ORDERED.