DESKTOP IMAGES, INC., a Colorado
corporation, Plaintiff,

v.

Anthony AMES, an individual; Silicon/Aames, Inc., a Colorado corporation, d/b/a Ames Teleproductions, Silicon Publishing, Silicon Mountain Publishing and Silicon Mountain Training; Diamond Entertainment Corporation, a California corporation; Wal–Mart Stores, Inc., a Delaware corporation; Sam's Wholesale Club, a Division of Wal–Mart Stores, Inc., a Delaware corporation; Best Buy Company, Inc., a Minnesota corporation; Time–Warner Viewer's Edge, a partnership of Video M Group and TMC Video; and American Portrait Films, Inc., an Ohio corporation, Defendants.

Civil Action No. 95–K–2229.

United States District Court,
D. Colo.

June 18, 1996.

Todd P. Blakely, John R. Posthumus, Sheridan, Ross & McIntosh, Denver, CO, for Plaintiff.

Muriel A. Agnelli, Susan M. Vogel, John P. Giduck, Denver, CO, for Anthony Ames & Silicon/Aames.

Peter W. Burg, Scott J. Eldredge, Burg & Eldredge, Denver, CO, for Sam's Wholesale Club/Wal–Mart.

Dennis A. Graham, Harold Bruno, III, Gabe McFarland, Hopper and Kanouff, P.C., Denver, CO, I. Steven Siglin, The Law Offices of I. Steven Siglin, Costa Mesa, CA, for Diamond Entertainment.

## MEMORANDUM OPINION
## AND ORDER

KANE, Senior District Judge.

Desktop Images, Inc. ("Desktop") filed a verified complaint on August 29, 1995, against Anthony Ames, Silicon/Aames, Inc. ("Silicon/Aames"), Diamond Entertainment Corporation ("Diamond"), Wal–Mart Stores ("Wal–Mart"), Inc., Sam's Wholesale Club ("Sam's"), Best Buy Company, Inc. ("Best Buy"), Time–Warner Viewer's Edge ("Time–Warner"), and American Portrait Films, Inc. ("APF"). Desktop seeks injunctive relief, damages, and attorney fees relating to the alleged misuse of its copyrighted video tutorial entitled "Understanding the Microsoft Windows 3.1. Operating System" ("video tutorial"). It asserts the following causes of action: (1) Copyright Infringement against all Defendants; (2) Contributory Copyright Infringement against Ames, Silicon/Aames and Diamond; (3) Vicarious Liability for Copyright Infringement against Ames; (4) Violation of section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a), (unfair competition) against Diamond, Wal–Mart, Sam's Wholesale Club, Best Buy, Time–Warner and APF; and (5) Fraudulent Misrepresentation against Ames and Silicon/Aames.

Subject matter jurisdiction exists under 28 U.S.C. § 1338(a) (original jurisdiction of any civil action arising under any Act of Congress relating, *inter alia,* to copyrights and trademarks), 1338(b) (original jurisdiction of any civil action asserting a claim of unfair competition "when joined with a substantial and related claim under the copyright ... or trade-mark laws"), 1367 (supplemental jurisdiction over all claims related to claims within original jurisdiction), and 15 U.S.C. § 1121 (original jurisdiction of actions arising under Lanham Act.).

On October 5, 1995, Defendants, Ames, Silicon/Aames, Wal–Mart, and Sam's filed a Motion to Dismiss Complaint, or in the alternative, to Stay Proceedings and Compel Arbitration. The remaining Defendants, Diamond, Best Buy, and APF have joined in the motion.

The motion raises the issue of whether the action involving alleged copyright and trademarks violations is properly before me when, according to Defendants, the alleged violations are related to allegations of breach of a contract containing a mandatory arbitration clause. I deny the motion.

## I. *Allegations in the Complaint.*

Desktop alleges it is and always has been the exclusive owner of the copyright for its video tutorial. The video tutorial received publicity in October 1992. Thereafter, Ames and Silicon/Aames contacted Desktop regarding and expressed interest in obtaining the exclusive license to market the video tutorial. After some negotiation, on June 15, 1993, Desktop and Silicon/Aames entered into an agreement which authorized Silicon/Aames to "advertize, promote and sell" a modified version of Desktop's copyrighted video tutorial ("Agreement") (Compl.Ex. 2). Desktop retained exclusive ownership of the copyright of the video tutorial and the modified version thereof, which comprised certain sections of the original relating to more advanced aspects of the Windows software ("modified tutorial.") Silicon/Aames was to pay $2.00 per video sold and to provide monthly accounting reports and royalty payments to Desktop for sales of the modified video.

Sometime after June 15, 1992, Erland Blume, an officer of Desktop, and Ames created a master to allow Ames and Silicon/Ames to create video tapes containing the modified tutorial. The relevant sections were copied from Desktop's master. Desktop and Ames added the name "Silicon Mountain" by itself at the beginning of the videotape followed by the title "Mastering Windows." At the end they added a legend stating the video was distributed by Silicon Mountain Publishing from whom more information could be obtained and reflecting a 1992 registered copyright of Desktop with all rights reserved.

According to complaint, from June 1993 through March 1994, Ames and Silicon/Aames advertised, promoted and sold the modified version of Desktop's video tutorial but failed to provide monthly accounting reports or royalty payments as required by the Agreement. In March, 1994, after some inquiry by Desktop, Ames tendered to Desktop a check in the sum of $280.00 for the purported sale of 140 videotapes containing the modified tutorial but failed to provide an accounting report.

By May 1994, Desktop grew suspicious that Ames and Silicon/Aames were misrepresenting the status of sales efforts and were under-reporting sales to Desktop. Desktop discovered the modified tutorial was being reproduced, distributed and sold by numerous third parties, including Defendant Diamond.

In May/June 1994, Desktop learned Ames was advising potential customers that, since January 1994, Silicon/Aames was selling approximately 80,000 units per month of a new video entitled "Mastering Windows." As a result, Desktop conducted an investigation into the activities of Ames and Silicon/Aames with respect to videos containing the modified tutorial.

Through its investigation, Desktop discovered Defendant Diamond, a California corporation, had a videotape entitled "Mastering

Windows" which was an exact copy of the modified tutorial and was being sold by Wal-Mart. The packaging of the video reflected it was licensed, designed and distributed by CompuLearn, USA in New Jersey. The label on the video indicated Mastering Windows was the property of Diamond Entertainment Corporation which owned a 1992 registered copyright in it.

The complaint alleges Ames and Silicon/Aames provided to Diamond, without Desktop's authorization, the master containing the modified tutorial to enable Diamond to reproduce the contents of the master on video and to distribute and sell the videotapes to others as a Diamond product.

Desktop discovered other copies of the modified version of its video tutorial with similar markings and labels to those sold by Diamond were available through Sky Mall, a mail order publication.

Through an investigator, Desktop discovered Silicon/Aames was selling a small amount of video tapes directly to the public but that its primary business was the sale of video tapes to out of state companies who reproduce and privately label the videotapes. A representative of Silicon/Aames demonstrated to the investigator the company's ability to remove all identifying information from a videotape and replace the information with new company names and copyright information so that the private label company can sell the video as its own.

Desktop discovered in July 1994 that a "Mastering Windows" video tape copied and distributed by Diamond was available from Best Buy.

In July 1994, pursuant to the Agreement, Desktop gave Silicon/Aames notice of its intention to conduct an audit of its accounting records. The audit revealed royalty payments from Diamond to Silicon/Aames based upon sales of a large number of videos, including one entitled "Mastering Windows."

In July 1994, Desktop discovered an Indiana company, Jist Works, Inc. was selling a video entitled "Windows Advanced" in respect of which Jist had a royalty agreement with Silicon/Aames. "Windows Advanced" was a copy of the modified version of

the video and was labelled as Jist Work's own product.

On August 25, 1994, by certified letter, Desktop terminated its Agreement with Silicon/Aames, on the grounds that "Silicon/Aames, Inc. has failed to pay royalties in full when such royalties were due and to provide timely reports." (Compl.Ex. 8.) Desktop requested the return of all versions of any video incorporating its copyrighted video tutorial based on its belief that Silicon/Aames had provided masters or copies of the material to third parties to reproduce and sell under their own label.

In response, by letter dated September 1, 1994, Ames advised Silicon/Aames would be "most happy to terminate this relationship and send your products back to you." (Id., Ex. 9.) The letter stated Silicon/Aames had "already replaced [Desktop's] video in some areas with our own product and we will continue to replace your videos until there is not copy of your products here or with anyone we work with." Silicon/Aames did not return any masters to Desktop.

Thereafter, Desktop discovered Defendant APF was selling a videotape tutorial entitled "Video Power Learning—The Easiest Way To Learn Everything About Windows" containing an exact copy of the modified tutorial with packaging and labelling changed.

In February 1995, Desktop purchased a video tape entitled "Mastering Windows" from a mail order catalogue entitled "Time-Warner Viewer's Edge." The video is a copy of the modified tutorial copied by Diamond and distributed to Defendant Time-Warner. Desktop purchased other copies of the modified tutorial labelled under the names "Windows Literacy" and "Mastering Windows" from various Sam's Clubs and Best Buy stores, also allegedly copied and distributed by Diamond.

The five claims for relief are based on the allegations stated in summary above. Desktop asserts Aames and Silicon/Aames were not authorized at any time to reproduce the copyrighted video tutorial in a form for reproduction by others and to reproduce the tutorial for any purpose after the termination of the Agreement on August 25, 1994. It

further states Diamond and APF were not authorized at any time to reproduce the modified tutorial, and Diamond, APF, Wal–Mart, Sam's Club, Best–Buy and Time–Warner were not authorized after termination of the Agreement to reproduce, distribute or sell Desktop's video tutorial. The complaint asserts Defendants have and are continuing to infringe Desktop's copyrights.

## II. *Positions of the Parties.*

Defendants maintain every aspect of the complaint is explicitly or implicitly dependent upon and related to the Agreement. They state the complaint alleges the rights of Diamond, Wal–Mart, Sam's, Best Buy, Time–Warner and APF to copy, sell or otherwise distribute the subject material are all dependent upon the contractual rights of Silicon/Aames under the Agreement, and the extent to which it was authorized to sublicense, distribute, and sell the subject material. Further, Defendants assert, Desktop's ability unilaterally to terminate the Agreement is at issue and must be decided under the terms of the Agreement.

Defendants cite § 16 of the Agreement which pertinently provides:

> The parties agree that any disputes or questions arising thereunder including the construction or application of the Agreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association then in force.

(Compl., Ex. 2 § 16.)

Defendants argue, by the terms of the complaint and the correspondence exchanged before its filing, this action "constitutes nothing more than a dispute or question arising under the Agreement." (Motion to Dismiss, ¶ 8.) They maintain strong federal policy favors arbitration and requires that when a contract mandates arbitration courts must enforce such clause absent a waiver of the parties. *See Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 465–6 (10th Cir. 1988).

Further, Defendants contend, the Agreement is subject to the Federal Arbitration Act, 9 U.S.C. §§ 1–15 ("Arbitration Act"), § 3 of which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such a suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

They assert, once a party moves for a stay of proceedings pursuant to the Arbitration Act, the court must limit its inquiry to whether a written agreement to arbitrate the subject matter of the dispute exists between the parties and, if so, the agreement to arbitrate has been breached. *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Thomson,* 574 F.Supp. 1472, 1474 (E.D.Mo. 1983).

Defendants therefore request me to dismiss the complaint, or in the alternative, to stay this proceeding and to compel a complete resolution of all issues by arbitration in accordance with the Agreement. They also seek an award of attorney fees and costs.

Desktop, on the other hand, maintains the motion should be denied because its claims are not dependent upon nor related to the terminated Agreement. It asserts Defendants are trying to cut off its remedies for copyright infringement and violation of § 43 of the Lanham Act by mischaracterizing the complaint as one for breach of contract against Silicon/Aames.

Desktop asserts, assuming the motion is one for dismissal under Federal Rule of Civil Procedure 12(b)(1), the complaint clearly establishes this court has subject matter jurisdiction in that it alleges Desktop's ownership of a valid copyright registration and that Defendants' duplication and distribution of Desktop's copyrighted video violates its copyright and is in violation of § 43 of the Lanham Act.

Desktop further argues its complaint does not assert a claim that the Agreement was breached and therefore the provision to arbitrate in the Agreement is not implicated. It maintains the claims for copyright infringement, unfair competition and fraud and the activities giving rise to such claims do not arise from the Agreement, or stated otherwise, there is no agreement between Desktop and any of the Defendants to arbitrate any of the claims in the complaint. Therefore, Desktop states the Arbitration Act does not require me to stay the action and compel arbitration.

Desktop maintains it is entitled to choose its claims and relief. As such, it has chosen claims not arising nor involving the Agreement and seeks remedies to which it is entitled under the Copyright and Lanham Acts, over which this court has jurisdiction.

Finally, Desktop states a proposed stay in favor of arbitration would complicate matters because arbitration could only address events occurring before termination of the Agreement. It alleges termination occurred by its letter dated August 24, 1994, (Compl., Ex. 8), ratified by Silicon/Aames by letter dated September 1, 1994, (Compl., Ex. 9). According to Desktop, its claims involve, *inter alia,* Defendants' copyright infringement and violation of § 43 of the Lanham Act occurring after termination of the Agreement. Desktop asserts its competing interest in pursuing its claims regarding Defendants' post-term actions warrants against a stay of this action.

In reply, Defendants request me to examine the Agreement and the complaint when addressing Desktop's contention that the Agreement does not govern its claims for relief. They point out, as the complaint reflects, the Agreement was unilaterally drafted by Desktop after some negotiation and rejection of other proposals and presented to Silicon/Aames. It is on a standard form routinely used by Desktop. Defendants cite Colorado law to the effect that ambiguities in a contract are to be construed against its drafter. *See United States Fidelity & Guar. Co. v. Budget Rent–A–Car Systems, Inc.,* 842 P.2d 208, 211 (Colo.1992).

Defendants maintain the complaint contains references to the Agreement in seventeen different paragraphs and Desktop cannot assert a single claim if it is found that Silicon/Aames did not violate the Agreement or termination of the Agreement was not effective. They note § 13 of the Agreement made it effective on June 15, 1993 and that it was to "continue in full force for a period of not more than five (5) years." (Compl., Ex. 2, § 13.)

Defendants state Desktop could only terminate the Agreement in accordance with its terms, as it acknowledged in its August 24, 1994 letter attempting to terminate the contract pursuant to § 8a) of the Agreement. That provision states: "Failure to pay royalties in full when due can result in the termination of this contract at the option of Owner." (Compl., Ex. 2, § 8a).) Defendants argue whether Silicon/Aames failed to pay royalties "when due" thus entitling Desktop to terminate the contract is a matter to be determined according to the terms of the Agreement.

Defendants also refer to § 8b) of the Agreement which contemplates the use of "outside duplication services" by Silicon/Aames for the reproduction of copyrighted material and § 10 which "specifically grants to SMP [Silicon/Aames] and duly appointed and authorized representatives of SMP the exclusive right to execute binding sales agreements for the Program." (Compl., Ex. 2, § 10.)

According to Defendants, an issue for determination in this litigation is whether permission by Silicon/Aames to other Defendants to duplicate the copyrighted materials and execute binding sales of the material was in breach of the Agreement. A further alleged issue is whether Silicon/Aames failed to compute and pay royalties sufficient to constitute a breach entitling Desktop to terminate the Agreement. These, Defendants assert, are issues to be determined under the Agreement and are therefore arbitrable under the terms of the Agreement.

Defendants state if it is determined that there was no breach on the part of Silicon/Aames entitling Desktop to terminate the Agreement, the termination was ineffec-

tual and none of the Defendants would have committed any copyright infringement.

Defendants do not attack this court's subject matter jurisdiction over federal copyright law issues. Rather, they maintain the issue is whether it is proper for Desktop to bring an action before this court alleging copyright violation dependent on allegations of breach of a contract which contract contains a mandatory arbitration clause. They iterate the strong federal policy favoring arbitration and note the lack of authority in support of Desktop's contention that the arbitration agreement can be ignored in these circumstances.

With regard to those Defendants who are not parties to the Agreement, Defendants maintain an action exists against them only if Desktop prevails in the arbitration against Silicon/Aames for breach of the Agreement, i.e. that all the infringement claims are dependent upon the determination that the Agreement was breached. They assert joinder by all Defendants in the motion reflects Plaintiff can obviate any delay by arbitrating its claims against all parties. Alternatively, Desktop may proceed to arbitration against Silicon/Aames and, if there successful, pursue an action against the remaining Defendants before this court.

### III. *Merits.*

There is a dearth of authority cited in the briefs, addressing the issue of whether, in circumstances such as these, Desktop's claims should be arbitrated or adjudicated in the district court.

The learned Melville B. Nimmer in 3 *Nimmer on Copyright,* § 10.15[A], [B] (1996), addresses whether copyright disputes are arbitrable. He first recognizes if a grantee under a license to use copyrighted material uses it in violation of the authorizing instrument, as alleged here, the grantor may have an action for breach of contract or for copyright infringement. *Id.* § 10.15[A].

In the case of a contract dispute where parties to the contract on which the suit is based have agreed that any disputes between them will be settled by arbitration, "there is no reason for a court to hesitate to imple-

ment the will of the parties with respect to contract interpretation, damages, and the like." *Id.* § 10.15[B].

In the case of "a copyright infringement action between two parties who at one time had been joint signatories to a contract concerning copyrighted property, and assuming that the instrument provides that any infringement suit at any time between the parties shall be settled by arbitration," two resolutions are possible:

On the one hand, the court could give effect to that contractual provision no less that to the arbitration clause in a straight contract dispute. On the other hand, given that the plaintiff in such a case had opted, *ex hypothesi,* to treat the contract as rescinded or otherwise of no operative effect (at least for the purposes of the lawsuit), and is relying on copyright principles that are applicable even when the defendant had never entered into a contract with the plaintiff, the court could determine that it should treat such an infringement action no differently from any other infringement case (in which the parties have not contracted together.) The first views such cases as arbitrable, the second as not arbitrable.

*Id.* (footnotes omitted).

Nimmer notes "[a]bsent such a provision, there is no basis for a court to send such an infringement suit to arbitration over the objection of a party," *id.* § 10.15[B] n. 39, and "in the case of an infringement suit between a plaintiff and defendant who had never entered into a mutual contract, there can be no arbitration clause on which to rely, nor any other basis for mandating arbitration," *id.* n. 38.

Nimmer describes *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228 (2d Cir.1982), as "one of the only opinions on this subject." Nimmer, *supra,* § 10.15[B]. Kamakazi sued Robbins Music for infringing its copyrights in the sheet music of pop star Barry Manilow. As here, the complaint stated claims under the Copyright Act and did not mention breach of contract as a theory of liability.

Robbins responded it had licensed the copyrights from Kamakazi and there was no federal jurisdiction over the suit which was for breach of contract. Alternatively, Robbins sought arbitration based on the contract which provided "any controversy or claim arising out of or relating to this agreement or the subject matter thereof, or the breach hereof shall be settled by arbitration." *Kamakazi*, 684 F.2d at 229.

The district court ruled it had jurisdiction because Kamakazi had sued under the Copyright Act, but ordered the case to arbitration pursuant to the arbitration clause. Robbins then appealed the district court's order confirming the arbitration award, asserting, *inter alia*, that public policy prohibited the submission of copyrights claims to arbitration. The Second Circuit upheld the referral to arbitration based upon the arbitration clause entered by both parties.

*Kamakazi* is unusual in that Robbins, the party who demanded arbitration, was the one to complain to the court about the results. Further, both parties apparently acquiesced in arbitration at the district court level. *See Kamakazi Music Corp. v. Robbins Music Corp.*, 522 F.Supp. 125, 128 (S.D.N.Y.1981). Nimmer comments because of these factors, "*Kamakazi* provides only weak support for the proposition that a court may send an infringement suit to arbitration over a party's objection." Nimmer, *supra*, § 10.15[B].

■ In the subject case, the Agreement states: "The parties agree that any disputes or questions arising thereunder including the construction or application of the Agreement shall be settled by arbitration...." (Compl., Ex. 2 § 16.) This is somewhat narrower than the arbitration clause in *Kamakazi* providing that "any controversy or claim arising out of, *or relating to* this agreement or the subject matter thereof or the breach thereof shall be settled by arbitration." *Kamakazi*, 684 F.2d at 229 (emphasis added). Here, the parties only agreed to arbitrate issues arising under the Agreement.

A reasonable interpretation of the Agreement is that it does not contemplate arbitration of a copyright infringement action because, such action does not arise under the agreement. If there is no agreement to arbi-

trate such infringement, there is no basis to send the suit to arbitration. *See* Nimmer, *supra*, § 10.15[B] n. 39.

As stated in a case cited by both parties, "[t]he question to be asked is not when did the acts complained about occur, but rather where do the rights and obligations which control the resolution of the dispute arise." *Merrill, Lynch*, 574 F.Supp. at 1475. The rights and obligations controlling the resolution of the issues raised in the complaint arise chiefly under the Copyright Act.

This case, rather than concerning a contract dispute, i.e. the failure of Silicon/Aames to comply with the terms of the Agreement, focuses on the violation of the copyright owner's property rights arising under the act. As such, Desktop properly seeks its remedies under the Copyright Act. *See Edwards & Co. v. SNE Enterprises, Inc.*, 1995 WL 688707 at *2–3 (N.D.Ill. Nov. 13, 1995).

I conclude the Agreement does not reflect the parties' intention to arbitrate copyright or trademarks violations, even though these may relate to the Agreement. Therefore § 3 of the Federal Arbitration Act mandating a district court to stay proceedings and compel arbitration does not apply because Desktop and Silicon/Aames did not agree in writing to arbitrate the issues underlying this proceeding.

■ Moreover, with regard to the other Defendants, who did not enter a mutual contract with Desktop, there is no arbitration clause on which they can rely nor any other basis for mandating arbitration.

Defendants do not dispute this court has subject matter jurisdiction over the issues raised in the complaint. Such jurisdiction is determined by the "well pleaded complaint" rule. *Malinowski v. Playboy Enterprises, Inc.*, 706 F.Supp. 611, 615 (N.D.Ill.1989). Desktop's complaint clearly alleges, *inter alia*, violation of its rights arising under the Copyright Act and claims relief under that act. Interposing the Agreement as a defense does not result in the dispute arising under the contract.

Nowhere in the Agreement does Desktop relinquish its copyright ownership or give

Silicon/Aames the right to alter the modified tutorial video so as to allow third parties to distribute and sell it under a private label, as alleged. Desktop's complaint, liberally construed, can be interpreted as advancing a copyright infringement claim even if the Agreement was not terminated as Defendants argue.

Desktop has opted to treat the contract as of no operative effect, at least for the purposes of the lawsuit, and is relying on copyright principles that are applicable even if it had never entered into a contract with Defendants. In these circumstances, I treat the infringement action no differently from any other infringement case in which the parties have not contracted together. *See* Nimmer, *supra*, § 10.15[B].

IV. *Conclusion.*

For the aforesaid reasons, I deny the motion to dismiss the complaint, or in the alternative to stay proceedings and compel arbitration. Accordingly,

IT IS ORDERED THAT Defendants' Motion to Dismiss Complaint, or in the Alternative, to Stay Proceedings and Compel Arbitration is DENIED;

IT IS FURTHER ORDERED THAT the case is set for a scheduling conference at 9:00 a.m. on Friday, June 28, 1996 in Courtroom C–401.